UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIANA SIMS, on behalf of herself and all others similarly situated, | |
| Plaintiff, | No. 24 CV 5620 |
| v. | Judge Georgia N. Alexakis |
| AMERICAN HERITAGE PROTECTIVE SERVICES, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Briana Sims is suing American Heritage Protective Services, Inc., for alleged violations of the Fair Labor Standards Act. She now moves the Court to authorize notice of the lawsuit to other potential plaintiffs who can join her in an FLSA collective action.[1] For the following reasons, the Court denies Sims's motion for court-authorized notice.

**I.  Background**

American Heritage is a company that provides security services at client sites in Illinois, Indiana, and Michigan. [32] ¶¶ 15–16; [40] ¶¶ 2, 4. It currently employs more than 200 full-time security officers and 39 managers across 60 client sites: 37

---

[1] Sims has styled her motion as a "Motion for Order Granting Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs." [33]. For reasons that will become apparent, the Court refers to this as a motion for court-authorized notice. In addition, throughout this opinion, the Court will refer to plaintiff Briana Sims as "Sims" and to opt-in plaintiff Brittany Sims by her full name.

in Illinois, 12 in Indiana, and 11 in Michigan. [40] ¶¶ 4–5, 7. Since July 2021, it has employed approximately 1,100 full-time security officers. *Id.* ¶ 5.

Sims worked for American Heritage at client sites in and around Detroit, Michigan, from November 2022 until November 2024. *Id.* ¶ 10; [32] ¶ 17. She worked as a security officer and site supervisor until April 2024, when she became an operations coordinator for about two weeks. [32] ¶ 17; [42-4] at 34:6–35:14. Sims was then terminated following a dispute with her manager related to the conduct alleged in this case. [42-4] at 35:9–14, 55:12–56:15, 59:10–19. About a month after that termination, she returned to American Heritage as a security officer, where she stayed until she was again terminated in November 2024. *Id.* at 35:7–24, 119:22–121:23; [40] ¶ 11. Sims reported directly to David Broadnax from her initial hiring in November 2022 until February 2024 and to Shavon Alexander from February 2024 until her final termination in November 2024. [42-4] at 49:23–50:13; [40] ¶ 11. American Heritage paid Sims and other security officers on an hourly basis and classified them as non-exempt employees under the FLSA. [32] ¶¶ 20–21.

Meanwhile, Shaunda Ephraim filed this suit. [1]. Over the next six months, Sims and three others—Matthew Lemerond, Tamika Gibson Davis, and Brittany Sims—notified the Court of their consent to join the action as opt-in party plaintiffs, 29 U.S.C. § 216(b). [18]; [25]; [28]. Ephraim, Davis, Brittany Sims, and Lemerond (like Sims) had worked for American Heritage as security officers: Lemerond at a client site in East Chicago, Indiana, [41] ¶ 12, and the others at various client sites throughout Detroit, Michigan, [40] ¶ 10. Eventually, Sims replaced Ephraim as the

2

representative plaintiff, although Ephraim has reiterated her consent to participate in the action as an opt-in plaintiff. [29] ¶¶ 2–3.

Sims alleges that American Heritage required her and other similarly situated security officers to work without pay before and after their scheduled shifts. [32] ¶ 24. Each day, security officers had to arrive early and stay late, she alleges, in order to participate in "pass downs," which are shift-change procedures in which the security guard coming off duty and the security guard coming on duty exchange information about security issues and events that occurred during the previous shift. *Id.* ¶ 25. But American Heritage allegedly did not pay Sims or the other security officers for these pass downs; rather, it had a policy of not paying security officers for work performed outside of their scheduled shifts. *Id.* ¶¶ 24, 26.

Sims now moves for court-authorized notice of this lawsuit to potential opt-in plaintiffs. [33]. In support of her motion, she submits declarations from herself and the four opt-in plaintiffs and payroll data for herself, Ephraim, and Lemerond. [34-2]; [34-3]; [34-4]; [34-5]; [34-6]; [54-1]; [54-2]; [54-3]; [54-4]. American Heritage, in response, submits declarations from its head of human resources, Willie Miranda, [40], and its Director of Operations, Rodrick Parker, [41]; copies of two versions of its employee handbook, [42-1]; [42-2]; and deposition testimony from Sims, [42-4], and Lemerond, [42-3].[2]

---

[2] Although the parties agreed that "formal discovery" not begin until after the Court resolved Sims's instant motion, *see* [19], [20], [46], [47], Sims's and Lemerond's depositions were taken as part of these proceedings, [42-3], [42-4]. There is no indication in the record that Sims used the "informal discovery" period to depose witnesses for American Heritage.

3

## II.  Legal Standard

Employees may bring FLSA claims through a "collective action" on behalf of themselves and other "similarly situated" employees. 29 U.S.C. § 216(b); *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). Plaintiffs may only proceed as a collective if they establish, by a preponderance of the evidence, that they "are, in fact, similarly situated," at which point the district court will "certify" the collective action. *Richards v. Eli Lilly & Co.*, 149 F.4th 901, 912 (7th Cir. 2025).

But collective actions, unlike class actions brought under Rule 23 of the Federal Rules of Civil Procedure, are "a consolidation of individual cases" where each plaintiff "must affirmatively opt in to join." *Id.* at 906. "[D]istrict courts may," therefore, "issue notice of a pending collective action to 'potential plaintiffs' so that they may make 'informed decisions about whether to participate.'" *Id.* at 906 (quoting *Hoffmann-La Roche Inc. v. Sperlin*, 493 U.S. 165, 169–70, 172–73 (1989)).

"[T]o secure notice, a plaintiff must first make a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated." *Id.* at 913. That is, "a plaintiff must produce some evidence"—likely in the form of affidavits—"suggesting that they and the members of the proposed collective are victims of a common unlawful employment practice or policy." *Id.*

This threshold showing is similar to the "modest factual showing" that many courts in this district, including this Court, previously required for authorization of notice, commonly (although perhaps misleadingly) referred to as "conditional certification." *See Guevara-Uravac v. Sushi Ukai, Inc.*, No. 24 CV 8728, 2025 WL 919570, at *1 (N.D. Ill. Mar. 26, 2025); *Richards*, 149 F.4th at 907. Under that

4

standard, plaintiffs had to "provide *some evidence* in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Guevara-Uravac*, No. 24 CV 8728, 2025 WL 919570, at *1 (emphasis added) (quoting *Pieksma v. Bridgeview Bank Mortg. Co.*, Case No. 15 C 7312, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016)).

*Richards* has since made clear, however, that when assessing whether a plaintiff has made the threshold showing, courts must consider a defendant's rebuttal evidence. 149 F.4th at 913.[3] *Richards* explained that a threshold-showing requirement that accounts for defendant's rebuttal evidence "imposes a meaningful yet appropriate evidentiary burden on the plaintiff, reflecting both the preliminary stage of the proceedings and the practical significance of notice to both parties." *Id.* It added: "A lower standard would permit notice based on little more than allegations, conflicting with the [Supreme] Court's warning against encouraging 'the solicitation of claims.'" *Id.* (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989)).

If, after considering both parties' evidence, the district court determines that the "plaintiff fail[ed] to … establish[] a material factual dispute," it should "deny the motion for notice." *Id.* at 914. But the denial may be "without prejudice, subject to possible reconsideration if the plaintiff comes forward with further evidence." *Id.* "The watchword … is flexibility." *Id.*

---

[3] The Seventh Circuit decided *Richards* after the parties had briefed Sims's motion in full, but the parties submitted supplemental briefs addressing the decision. *See* [53]–[57].

If a plaintiff has made the threshold showing, it is left to the court's discretion to determine whether and when notice is appropriate. *See id.* at 913–14. If "the evidence necessary to resolve a similarity dispute is likely in the hands of yet-to-be-noticed plaintiffs," the court may issue notice to the proposed collective and later determine whether to certify the collective. *Id.* at 913. Or, if the court is confident that it can resolve the similarity dispute by a preponderance of the evidence before notice, "it may authorize limited and expedited discovery," determine whether to certify the collective, and then "tailor (or deny) notice accordingly." *Id.* The court "need not ignore evidence of dissimilarity at the pre-notice stage," *id.* at 915, but neither must it definitively resolve the similarity dispute before authorizing notice, *id.* at 911.

### III. Analysis

Sims seeks authorization of notice to the following proposed collective:

> All former and current full-time, non-exempt security officers (including associate security officers and security supervisors) employed by American Heritage Protective Services, Inc. in the United States at any time between three (3) years prior to the filing of this lawsuit and the date of final judgment in this matter.

[34] at 11; [30] ¶ 41. The Court can only authorize notice if Sims has made "a threshold showing that there is a material factual dispute as to whether the proposed collective is similarly situated." *Richards*, 149 F.4th at 913. Because Sims has not made the requisite showing, the Court will not authorize notice.

Sims has produced five declarations from five different security guards who worked at multiple client sites in Michigan and a client site in Indiana. [34-2]; [34-3]; [34-4]; [34-5]; [34-6]. All five declarants say that they performed pass down work

6

outside of their scheduled shifts, [34-2] ¶¶ 4, 6; [34-3] ¶¶ 6, 9; [34-4] ¶¶ 6, 9; [34-5] ¶¶ 6, 9; [34-6] ¶¶ 4, 7; that American Heritage required them to do so, *id.*; and that they were not paid for that pass down work, [34-2] ¶ 7; [34-3] ¶ 10; [34-4] ¶ 10; [34-5] ¶ 10; [34-6] ¶ 8. Four of the five declarants also observed other security guards performing pass down work outside of their shifts. [34-2] ¶ 10; [34-3] ¶ 13; [34-4] ¶ 13; [34-5] ¶ 13.

These declarations provide "some evidence" of a "common … practice or policy." *Richards*, 149 F.4th at 913. They show that the officers' experience of being required to perform unpaid pass down work is not limited to a single site, region, or manager. *See, e.g.*, *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1138–39 (N.D. Ill. 2017) (holding that two declarations, from employees in Illinois and Wyoming, were enough to make a modest factual showing that employees of a nationwide franchise company were similarly situated). Indeed, Sims and Lemerond each worked under two different managers and had the same experience under each. [40] ¶ 11; [41] ¶ 12; [42-4] at 158:22–159:5. It is reasonable to infer that plaintiffs' experience—common across multiple sites, regions, and managers—is the result of a "common practice or policy." *See Ivery*, 280 F. Supp. 3d at 1139.

Although Sims has presented evidence that, *considered alone*, could support a reasonable inference that members of the proposed collective were subject to a "common practice or policy," *Richards* 149 F.4th at 913, American Heritage also has presented evidence, and its evidence decisively undermines that inference, leaving no material factual dispute regarding similarity.

7

Sims's claims, and those of the proposed collective, turn on whether American Heritage had a common policy or practice of requiring security officers to conduct pass-down activities outside of their scheduled shifts. [30] ¶¶ 31, 32, 38. But American Heritage's Director of Operations, Rodrick Parker, declares that pass-down practices "vary substantially across client sites." [41] ¶ 5. At some client sites, there is no pass down at all. *Id.* ¶ 6. At others, "site supervisors overlap with security officers' shifts," and they "handle all inter-shift communication." *Id.* ¶ 7. And even when pass downs do occur, they may "consist[] only of handing off a phone or key." *Id.* ¶ 6. Sims's own deposition testimony corroborates this variance in pass-down practice. She testified that, at one client site, management "just gave [her] the keys and then [management] was gone," [42-4] at 187:5–7, and then she confirmed that she "didn't partake really in pass-down opportunities at that location," *id.* at 187:8–10. Nor did she conduct pass downs at another location, where the owner of the site "just gave [her] the keys." *Id.* at 188:16–19.

There is no material factual dispute regarding similarity when there is unrebutted evidence of dissimilarity with respect to a policy or practice that is central to a plaintiff's claim. For example, in *Calloway v. AT&T Servs., Inc.*, No. 1:18-CV-06975, 2024 WL 1328823 (N.D. Ill. Mar. 28, 2024), the court denied authorization of notice to a potential collective comprising 9,823 employees at 110 sites nationwide. *Id.* at *1. It did so because plaintiffs' claims turned on the reasonableness of the defendant's overtime reporting procedures, and, after substantial discovery, the

8

evidence showed that each employment site used one of at least four different procedures. *Id.* at *4–*5.[4]

Sims offers nothing to rebut the evidence of dissimilarity before the Court. *See Richards*, 149 F.4th at 913 (explaining that before a plaintiff can secure notice, the "defendant[] must be permitted to submit rebuttal evidence," and courts "must consider the extent to which plaintiffs engage with opposing evidence"). She offers five declarations, each of which describes the personal experiences and observations of the declarants. [34-2]; [34-3]; [34-4]; [34-5]; [34-6]. She also offers select payroll data from three of the declarants that generally seems to corroborate their declared statements that they were "only paid for work performed between [their] scheduled start and stop times." [54-1]; [54-2]; [54-3]; [54-4]; [34-2] ¶ 3; [34-3] ¶ 5; [34-6] ¶ 3.[5] But none of this rebuts American Heritage's evidence that pass-down practices "vary substantially across client sites." [41] ¶ 5. It is in fact perfectly consistent with such variance. Sims and Lemerond even admitted that they had no knowledge of pass-down practices at other sites. [42-4] at 188:24–190:16; [42-3] at 63:10–12. It can be

---

[4] In *Calloway*, the court applied the "modest factual showing" standard. 2024 WL 1328823, at *2. But, as discussed above, that standard is similar to the "material factual dispute" standard that the Court applies here. *See* Section II, *supra*.

[5] Sims declares that her manager Shavon Alexander told her that "it was company policy to change clock-in and clock-out times in the payroll system." Because this assertion does not change the fact that there is dissimilarity with respect to the policy or practice alleged in this case—that security officers were required to perform pass-down activities without pay, [30] ¶¶ 31, 32, 38—the Court need not resolve whether it is admissible as a non-hearsay party-opponent admission. Fed. R. Civ. P. 801(d)(2)(D); *Aliotta v. Nat. R.R. Passenger Corp.*, 315 F.3d 756, 762 (7th Cir. 2003) ("Rule 801(d)(2)(D) admissions can be made concerning any matter within the scope of the employment. … The only requirement is that the subject matter of the admission match the subject matter of the employee's job description.") (cleaned up).

true that five declarants at a handful of sites in Detroit and East Chicago were required to conduct pre- or post-shift pass-down activities while also being true that security officers at many—or even most—client sites were not.

When evaluating whether there is a material factual dispute, the court "cannot weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 63 F.4th 1121, 1129 (7th Cir. 2023) (cleaned up). But the Court does not need to engage in any of these prohibited activities in order to conclude that pass-down practices are dissimilar across the proposed collective based on the record before it. Indeed, it would be unreasonable to conclude otherwise. *Cf. Sarver v. Experian Info. Sols.*, 390 F.3d 969, 970 (7th Cir. 2004) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). Because American Heritage—like the defendant in *Calloway*, 2024 WL 1328823, at *5—has presented unrebutted evidence of dissimilarity with respect to its pass-down practices, which are central to the proposed collective's claims, there is no material factual dispute as to the proposed collective's similarity.

Sims disagrees. She argues that "[t]he alleged 'individual differences' [that American Heritage] raised—i.e., that security officers worked at different client sites, in different service areas, on different shifts, used different timekeeping systems, had different duties, and performed pass down activities at different frequencies or

10

durations—remain irrelevant." [54] at 10–11; *see also id.* at 12–13; [57] at 4. What matters to the analysis, according to her, is "the factual nexus binding [the proposed collective] together": American Heritage's "unlawful practice" of not paying members of the proposed collective "for time they were required to spend performing pass down activities before and after their shift." [54] at 11.

The problem with this argument is that American Heritage has presented unrebutted evidence showing that some members of the proposed collective were *not* required to spend time performing pass down activities before or after their shift. American Heritage's Director of Operations declared that some client sites "require no pass-down at all," and, at other client sites, "site supervisors overlap with security officers' shifts and handle all inter-shift communication." [41] ¶¶ 6, 7. Based on the evidence before the Court, then, there is no basis for concluding that the "factual nexus" proposed by Sims actually exists among the members of the proposed collective.[6] Absent that, it would be inappropriate to authorize notice. *See Richards*, 149 F.4th at 901 ("[O]verly permissive notice standards will allow plaintiffs to artificially expand the size of a collective, 'increasing pressure to settle, no matter the action's merits.'") (cleaned up) (quoting *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020)); *see also id.* at 911 ("A lenient and virtually unrebuttable notice showing also threatens judicial neutrality.").

---

[6] The proposed collective includes "*[a]ll* former and current full-time, non-exempt security officers (including associate security officers and security supervisors) employed by American Heritage Protective Services, Inc. in the United States at any time between three (3) years prior to the filing of this lawsuit and the date of final judgment in this matter." [34] at 11; [30] ¶ 41 (emphasis added).

11

The many cases that Sims marshals in support of her argument do not help.[7] Not one found similarity where, as here, the defendant presented unrebutted evidence that the allegedly unlawful policy or practice simply did not apply to swaths of the proposed collective. And in any event, they were resolved under a different legal framework than the one governing this case.

Nor is it the case that the differences identified by American Heritage are only relevant to the question of damages and can therefore be ignored in the similarity analysis. *See* [54] at 10. It is true that "variations in damages … do not warrant decertification." *Madden v. Corinthian Colls., Inc.*, No. 08 C 6623, 2009 WL 4757269, at \*3 (N.D. Ill. Dec. 8, 2009). But, unlike the cases Sims cites to exemplify this rule, the variations here do not merely affect damages; they are at the heart of each proposed collective member's claim: A security officer who was never required to perform pass downs outside of her shift cannot bring a claim for time she was required to perform pass downs outside of her shift. *See* [54] at 11.

The Court recognizes that it is permitted to "tailor (or deny) notice" based on the evidence before it, but it may only do so "[o]nce [it] is satisfied that there is at least a material dispute." *Richards*, 149 F.4th at 913–14. The Court's denial of Sims's motion for court-authorized notice is therefore "without prejudice to moving for

---

[7] The cases are: *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2015 WL 1542649 (N.D. Ill. Mar. 31, 2015); *Dennis v. Greatland Home Health Servs., Inc.*, 591 F. Supp. 3d 320 (N.D. Ill. Mar. 14, 2022); *Alvarez*, 605 F.3d 445; *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567 (6th Cir. 2009); *Monroe v. FTS USA, LLC*, 860 F.3d 389 (6th Cir. 2017); *Murphy v. Kettering Adventist Healthcare*, No. 3:23-cv-69, 2023 WL 6536893 (S.D. Ohio Oct. 5, 2023); *Simpson v. Adena Health Sys.*, No. 2:23-cv-2633, 2024 WL 3418137 (S.D. Ohio July 15, 2024); *Lott v. Recker Consulting*, LLC, 2024 WL 4694099 (S.D. Ohio Nov. 6, 2024); *Chabrier v. Wilmington Fin., Inc.*, 2008 WL 938872 (E.D. Pa. April 4, 2008).

certification of a collective that is narrower than the … currently proposed collective," *Calloway*, 2024 WL 1328823, at *6, "subject to possible reconsideration if the plaintiff comes forward with further evidence," *Richards*, 149 F.4th at 914.[8]

## IV. Conclusion

For the foregoing reasons, Sims's motion for court-authorized notice [33] is denied.

Georgia N. Alexakis
United States District Judge

Date: 11/20/25

---

[8] The Court's decision to deny the motion for court-authorized notice is because of the defendant's unrebutted evidence of dissimilarity, not because Sims only presented evidence pertaining to a limited geographic region. *See* [57] at 8 (Sims argues that the Court should not limit the geographic scope of the collective to the geographic regions where the existing plaintiff-declarants work). If Sims renews her motion for court-authorized notice, it will not be enough, then, to propose a collective that is narrower only in geographic scope.

13